IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEW HAMPSHIRE INSURANCE COMPANY,<br><br>      Plaintiff,<br><br>   v.<br><br>BILL MCNAB,<br><br>      Defendant.<br>_____/ | No. C 10-02496 CW<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT (Docket Nos. 32 & 34) |

The pending motions present disputes as to legally permissible offsets to certain insurance coverage. Plaintiff and Counterclaim Defendant New Hampshire Insurance Company (NHIC) moves for partial summary judgment. Docket No. 32. Defendant and Counterclaim Plaintiff McNab opposes the motion, and has filed a cross-motion for partial summary judgment. Docket No. 34. Having considered all of the parties' submissions, the Court grants in part and denies in part the parties' motions for summary judgment.

BACKGROUND

McNab was injured during the course and scope of his employment with Holt Transportation when, on July 28, 2006, another vehicle collided with the truck he was operating on a California highway. As a result of the accident, McNab suffered injuries to his face, back and extremities. NHIC issued Holt Transportation a commercial vehicle policy (NHIC policy) that, among other things, covered its employees for injuries caused by an underinsured motorist (UIM), sustained during the course and

1   scope of their employment with Holt Transportation.  The maximum
2   coverage under this UIM policy is $1,000,000.
3       Due to McNab's injuries suffered while on the job, he was
4   awarded workers' compensation benefits from the State Compensation
5   Insurance Fund (State Fund), including payment of past and future
6   medical expenses and disability income payments.  In addition, the
7   workers' compensation policy provides an $8,000 job training
8   voucher.  McNab also obtained a $100,000 settlement from the at-
9   fault driver's liability insurer.  McNab reimbursed $33,145.85 of
10  that settlement to the State Fund.  After the accident, McNab
11  began receiving federal social security disability payments.  He
12  continues to receive social security payments, and expects to
13  receive them on an ongoing basis.

## LEGAL STANDARD

15      Summary judgment is properly granted when no genuine and
16  disputed issues of material fact remain, and when, viewing the
17  evidence most favorably to the non-moving party, the movant is
18  clearly entitled to prevail as a matter of law.  Fed. R. Civ. P.
19  56.  Celotex Corp v. Catrett, 477 U.S. 317, 322-23 (1986);
20  Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1289 (9th Cir.
21  1987).  The court must draw all reasonable inferences in favor of
22  the party against whom summary judgment is sought.  Matsushita
23  Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986);
24  Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558
25  (9th Cir. 1991).
26      Material facts which would preclude entry of summary judgment
27  are those which, under applicable substantive law, may affect the
28  outcome of the case.  The substantive law will identify which

2

facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

DISCUSSION

I. Social Security Payments

NHIC argues that a provision of its policy allows it to offset social security payments from its UIM coverage. That provision states,

> We [NHIC] will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits or similar law.

NHIC Policy, California Uninsured Motorist Coverage, Part D, ¶ 3.[1] McNab responds that this provision violates California law to the extent that it permits offsets for social security payments. The Court agrees.

California law sets forth the reductions allowable for underinsured and uninsured motorist coverage. California Insurance Code § 11580.2(h) states in relevant part,

> Any loss payable under the terms of the uninsured motorist endorsement or coverage to or for any person may be reduced:
>
> (1) By the amount paid and the present value of all amounts payable to him or her, his or her executor, administrator, heirs, or legal representative under any workers' compensation law, <u>exclusive of nonoccupational disability benefits</u>.
>
> (2) By the amount the insured is entitled to recover from any other person insured under the underlying liability insurance policy of which the uninsured

---

[1] The NHIC policy makes clear that its underinsured motorist coverage is included in its uninsured motorist coverage. NHIC Policy, Renewal Declaration, p. 5.

3

>   motorist endorsement or coverage is a part, including any amounts tendered to the insured as advance payment on behalf of the other person by the insurer providing the underlying liability insurance.

(emphasis added). The offsets allowed in § 11580.2(h) apply to UIM coverage. Rudd v. California Casualty Gen. Ins. Co., 219 Cal. App. 3d 948, 955 (1990). California Insurance Code § 11580.2(e) further provides for reductions in uninsured motorist coverage by amounts paid by an auto insurance provider for medical expenses, and § 11580.2(p)(4) allows an offset from underinsured motorist coverage for an "amount paid to the insured by or for any person or organization that may be held legally liable for the injury." The California Court of Appeal has declined to enforce a policy provision that set forth a reduction in uninsured motorist payments that was not approved by the legislature. Preferred Risk Mutual Ins. Co. v. Harrison, 118 Cal. App. 3d 561, 564 (1981).

   NHIC's citation to California Insurance Code § 11580.2(a)(1) does not support an offset based on McNab's social security payments. The provision authorizes an insured and insurer to agree to limit uninsured motorist coverage for bodily injury to an amount less than $30,000, as long as it is more than $15,000, the minimum required by California Vehicle Code § 16056. However, this provision does not mean that any and all agreements to reduce coverage are enforceable. Rather, the very cases NHIC cites make clear that agreements to reduce coverage must be in accordance with law. Darrah v. California State Automobile Association, 259

4

Cal. App. 2d 243, 246 (1968) ("[T]here can be no doubt of the right of the insurance companies to limit, in accordance with section 11580.2, the coverage of their policies, and when they have done so the plain language of the limitations must be respected.") (emphasis added); Lumberman's Mut. Cas. Co. v. Wyman, 64 Cal. App. 3d 252, 259 (176) ("There is no doubt that an insurance company can limit the coverage of a policy issued by it as long as such limitation conforms to the law and is not contrary to public policy."). Section 11580.2(p)(4) does not apply because the Social Security Administration is not liable for McNab's injury. The agency provides social security payments when an individual's disability precludes employment. See Cole v. California Ins. Guar. Ass'n., 122 Cal. App. 4th 552, 560 (2004) (denying, in an action against the California Insurance Guarantee Association, offsets for social security payments against uninsured motorist coverage because the social security benefit stems from the insured's ongoing inability to be employed due to disability, whereas her claim under the automobile insurance policy was for bodily injury).

   Nor are NHIC's public policy arguments persuasive. Even though uninsured and underinsured motorist coverage is not designed to make the insured whole, this does not render enforceable reductions in uninsured and underinsured motorist coverage that are precluded by legislation. NHIC argues that disallowance of an offset for McNab's social security payments

5

1 leaves him in a better position than if the tortfeasor had been
2 fully insured.  However, NHIC provides no authority that payments
3 pursuant to such a liability policy would be reduced by social
4 security payments received by the beneficiary.  NHIC's invocation
5 of the threat of double recovery is without merit because social
6 security disability insurance provides coverage if a disability
7 renders a person unable to work, while NHIC's UIM policy extends
8 coverage in event the insured suffers bodily injury as a result of
9 an automobile accident with an underinsured motorist.  There is no
10 double recovery because the policies are directed at different
11 
12 risks.

The social security benefits McNab has received or will receive in the future are not permissible offsets from the NHIC underinsured motorist policy limit.  Therefore, with respect to this issue, the Court denies NHIC's motion for partial summary judgment, and grants McNab's cross-motion for partial summary judgment.

II. Workers' Compensation Benefits

The parties agree that offsets for lost income payments and medical expenses paid by the State Fund are permissible.  NHIC also seeks to offset from its UIM policy limits the value of the job training voucher and future medical expenses to be covered by the State Fund.  California Insurance Code § 11580.2(h)(1) provides that uninsured and underinsured coverage may be reduced "[b]y the amount paid and the present value of all amounts

6

payable" under any workers' compensation law.  Rudd, 219 Cal. App. 3d at 955 (applying § 11580.2(h)(1) to UIM coverage).

The California Court of Appeal has cited Black's Law Dictionary for the definition of the term "payable:" "capable of being paid; suitable to be paid; admitting or demanding payment; justly done, legally enforceable."  Bailey v. Interinsurance Exchange, 49 Cal. App. 3d 399, 404 (1975).  Bailey and Burkett v. Continental Cas. Co., 271 Cal. App. 2d 360, 362 (1969) are not on point because the insured in those cases never applied for any workers' compensation benefits, unlike the present case where McNab has applied for and received benefits through the State Fund.  In Waggaman v. Northwestern Sec. Insurance Company, 16 Cal. App. 3d 571 (1971), the court affirmed the denial of an offset for future permanent disability payments through workers' compensation.  However, in Waggaman the insured's present physical condition had not been determined, and permanent disability had not been established.

In contrast to Waggaman, McNab has been deemed permanently disabled, and the State Fund's Award on Stipulation provides: "Further medical treatment to [McNab's] upper back, chest, ribs, left shoulder and left elbow."  McNab intends to seek further payment from the State Fund for future medical costs, although the precise amount is unknown.  Thus, an offset for medical expenses covered by the State Fund is warranted.  On the other hand, it appears unlikely that McNab will be able to use the job training

7

voucher due his ongoing disability and his age.  Since McNab will not likely receive this benefit, an offset for its value is unwarranted.

Accordingly, the Court grants NHIC's motion for partial summary judgment and denies McNab's cross-motion with respect to future medical expenses paid by the State Fund, but denies NHIC's motion for partial summary judgment and grants McNab's cross-motion for partial summary judgment regarding the offset for the job voucher.  The parties do not know and the Court cannot adjudicate the amounts of McNab's future medical expenses.  The fact that they will be paid for, however, can be taken into account in any settlement or insurance arbitration.

III. Settlement from At-Fault Driver's Policy

McNab seeks summary adjudication that NHIC cannot offset the full amount of the $100,000 settlement he received from the at-fault driver's liability insurance policy because McNab reimbursed the State Fund $33,145.85 from that settlement.

NHIC cites Waggaman, 16 Cal. App. 3d at 580 n.7, for support that it is entitled to offset the full amount of the settlement.  The case, however, is not on point.  In addition, NHIC relies on a provision in its policy stating that its UIM and UM coverage do not apply to the "direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law . . ."  NHIC Policy, California Uninsured Motorist Coverage, Part C, ¶ 3.  This language does not support NHIC's

8

contention that the parties agreed to offset such reimbursements. McNab's reimbursement to the State Fund for a portion of benefits he received is not a direct or indirect benefit to the State Fund that the policy provision sought to proscribe.  The State Fund received its reimbursement from a portion of McNab's settlement with the at-fault driver's liability insurer, not from any payment made by NHIC pursuant to its UIM or UM coverage.

The basis for McNab's reimbursement to the State Fund and the terms of its lien are not clear.  However, to the extent that McNab reimbursed the State Fund with a portion of his settlement with the at-fault driver in compliance with law, NHIC is not entitled to offset the full amount of the settlement.  Rudd, 219 Cal. App. 3d at 956 (holding that an insurer may set off the insured's underinsurance coverage for the amount of workers' compensation benefits paid to the insured, except to the extent that the insured did not receive or retain proceeds from the tortfeasor because of the workers' compensation carrier's lien or recoupment rights).

IV. Workers' Compensation Disability Payments

McNab's cross-motion seeks summary adjudication of the amount of disability payments he has received from the State Fund.  NHIC does not dispute the amount.  Therefore, the Court summarily adjudicates that McNab has received $88,283.08 in disability payments.  The parties agree that this amount can be offset.

CONCLUSION

The Court denies NHIC's motion for partial summary judgment that it may offset McNab's social security payments, and grants McNab's cross-motion for partial summary judgment with respect to that issue.

The Court denies NHIC's motion for partial summary judgment and grants McNab's cross-motion for partial summary judgment that the amount of the job voucher cannot be offset, but denies McNab's cross-motion and grants NHIC's motion that future medical expenses paid by the State Fund may be offset.  The Court cannot determine the amount of future medical expenses that may be offset.

The Court summarily adjudicates that NHIC may offset only $66,854.15 of the $100,000 settlement McNab received from the at-fault driver's liability insurance policy because McNab reimbursed the State Fund $33,145.85

Finally, the Court summarily adjudicates that McNab has received $88,283.08 in disability payments, which, the parties agree, may be offset.

IT IS SO ORDERED.

Dated:  **3/18/2011**

CLAUDIA WILKEN
United States District Judge

10